MAY *v.* NATIONAL BANK OF EASTERN ARK.

5-1994                                              331 S. W. 2d 697

Opinion delivered February 1, 1960.

[Rehearing denied February 29, 1960]

*Brockman & Brockman,* for appellant.

*E. J. Butler,* for Appellee, National Bank of Eastern Ark.; *James R. Howard,* for Appellees, John Collins, *et al.*

J. SEABORN HOLT, Associate Justice. This is a foreclosure suit. We shall refer to appellants as May, and the appellee, National Bank of Eastern Arkansas, as Bank.

Appellee, Bank, filed suit against appellants, W. D. and Dorothy May, his wife, and others, to foreclose a chattel mortgage on certain saw mill and planer mill equipment, which mortgage May and wife had executed to secure payment of a note in the aggregate amount of $29,662.36 executed by them on June 23, 1954. This note of the Mays was a collateral note which was pledged as additional security along with certain invoices for lumber milled by May, and the proceeds of a life insurance policy. The note also provided that additional security would be given to the Bank at a later date and for "attorney's fees as authorized by law if not paid when due and if placed in attorney's hand for collection." January 19, 1955, May assigned to Bank a note in the amount of $29,649.05 of American Radio and Television, Inc., to take the place of, and to be substituted for, the invoices (some 15 in number) set out in the above collateral note of June 23, 1954. The Bank also held a separate Guarantee Agreement signed by John Collins, Paul M. Leird, H. G. Galloway and C. Hamilton Moses, to the effect that these four guarantors would guarantee the payment of the May note above to Bank on condition that before any liability should attach to them on said guaranty, that Bank would first exhaust its security under the chattel mortgage from May to Bank and all other security that the Bank held on said note. On September 11, 1958, a default decree was rendered against May for $19,127.70, on constructive service. The Mays were residents of Dallas, Texas at the time.

Thereafter, May filed a motion asking for retrial, alleging fraud and collusion on the part of Bank and the four guarantors above and a general denial of any liability, and asked for $15,000 damages. It appears that the trial court granted May's motion and the case was retried on December 19, 1958 and later, on February 9, 1959, a decree was entered in favor of the Bank for the balance of the principal sum due on the note remaining unpaid, along with six percent (6%) interest thereon in the total sum of $17,363.82, and if not paid within ten (10) days from date of the decree, that said

chattel mortgage be first foreclosed and if the proceeds therefrom be insufficient to pay the balance due, then that said American Radio and Television, Inc., note above be sold to apply on, or to satisfy, any deficiency, and that May was entitled to no damages. The record shows that sales were had in accordance with the decree and that there remained a deficiency left unpaid on the mortgage note and attorney's fees of $1,616.23 were also allowed. Following this decree the Mays appealed therefrom to this court and executed and filed a *supersedeas* bond in the amount of $22,156.18 on March 12, 1959 which the court approved on May 19, 1959, and ordered the clerk to issue a *supersedeas* staying all other proceedings relative to the sale of chattels and pledged note pending this appeal.

### (1)

For reversal, May first contends that ''The decree of September 11, 1958, and the decree of February 9, 1959, are void for lack of jurisdiction of the defendants.'' We hold that this contention is clearly untenable for two reasons: (1) The record in this case shows that at the first trial, September 11, 1958, summons was served on the Mays by constructive service in the manner provided by our statutes, § 27-354 and § 27-355 Ark. Stats. A warning order was properly issued and published, an attorney *ad litem* appointed who properly wrote separate letters to May and Dorothy May to their last known address in Dallas, Texas notifying each of the pending suit against them. His letter to May was returned but the letter to Dorothy May was not returned. The court found, and we hold correctly so, in its decree of September 11, 1958, (the first trial) that proper constructive service was had on the Mays. That decree recites: ''That the Defendants, W. D. May, Dorothy May, * * * were served either personally or constructively for the time and in the manner required by law, and this Court has jurisdiction of the parties and the subject matter.'' (2) We also hold that the Mays entered their appearance in the retrial action when they voluntarily filed their motion for re-

trial on the issues on October 15, 1958, in which they interposed their defenses. This motion of the Mays was granted and a retrial on the merits was had. Certainly we think, in the circumstances, as indicated, that they entered their appearance for all purposes. The court so found. The decree of February 9, 1959, on the retrial, recites: "That the Defendants, W. D. May, d/b/a W. D. May Lumber Company, and Dorothy May, were first served constructively for the time and in the manner required by law, and have since entered their appearance on said Motion to Retry, and this Court has jurisdiction of them under personal entry of appearance and the subject matter of this litigation."

We find no evidence in this record of any fraud or collusion between Bank and the four above guarantors. The court so found: "* * * there was no collusion between the Plaintiff Bank and the American Radio and Television, Inc., nor with any of its officers, trustees, or directors, to deprive defendant W. D. May of anything."

(2)

May next argues that: "Plaintiff Bank demanded attorney's fees, by reason of the note sued on, in a sum in excess of 10 percent of the principal sum plus accrued interest, and said demand is void: (1) Because it is an usurious demand; (2) there is no indemnity agreement expressed in the note sued on." We do not agree. The collateral note here, which May executed in favor of the Bank on June 23, 1954, provides on its face for interest at six percent (6%) and also contains a provision for "* * * attorney's fees as authorized by law if not paid when due and placed in the hands of an attorney for collection,". It is undisputed that the chancellor allowed an attorney fee of ten percent (10%) in accordance with the maximum permitted under Act 350 of 1951 (Ark. Stats. § 68-910) which provides: "A provision in a promissory note for the payment of reasonable attorneys' fees, not to exceed ten per cent (10%) of the amount of principal due, plus accrued interest, for services actually rendered in ac-

cordance with its terms is enforceable as a contract of indemnity.''

The Bank produced evidence that, ''As of November 18, 1957, the balance of principal and interest due the National Bank of Eastern Arkansas on the W. D. May note, without compounding interest, as permitted in the note, from year to year was $17,363.82. Ten percent (10%) of that amount equals $1,736.38 which was requested as attorney's fees.'' If, therefore, Act 350 of 1951 is constitutional and enforceable, appellants' plea of usury must fall. We held this Act constitutional in the recent case of *Holloway* v. *Pocahontas Federal Savings and Loan Association*, 230 Ark. 310, 323 S. W. 2d 204. We there said: ''It is true that for many years such a stipulation in a promissory note (that is, a stipulation that 10% may be added to the face of the note as an attorney fee) was held to be against public policy and therefore, unenforceable, *Boozer* v. *Anderson*, 42 Ark. 167, *Arden Lbr. Co.* v. *Henderson, etc., Co.*, 83 Ark. 240, 103 S. W. 185; but in 1951 the legislature changed the rule by permitting the parties to a note to agree upon a reasonable attorney's fee for the creditor. Ark. Stats. 1947, § 68-910. We have upheld other statutes authorizing the recovery of attorney's fees, such as the act applicable to insurance cases, *Ark. Ins. Co.* v. *McManus*, 86 Ark. 115, 110 S. W. 797, and there is even less reason for saying that the constitution prohibits the legislature from authorizing the parties to make a voluntary agreement for such a fee.''

(3)

May next contends: ''There was a conspiracy or collusive agreement carried on among the plaintiff bank, American Radio and Television, Inc., and Paul M. Leird, John Collins, H. G. Galloway, and C. Hamilton Moses, to sell W. D. May's pledged note, in the sum of $29,-649.05 illegally and for an inadequate price.'' We also hold this contention to be without merit. This note of $29,649.05, which it is conceded American Radio and Television, Inc., had given to May in payment of the above invoices for materials sold by May to it, was, as

indicated, part of the pledged collateral held by Bank and which it had a right to sell and did sell to the highest bidder at a public sale under the second decree above of February 9, 1959, and applied the proceeds of said sale on May's note to the Bank. All of this was entirely proper. Without attempting to detail the testimony, it suffices to say that we find no evidence whatever of a conspiracy or collusion between Bank, the four guarantors above, the American Radio and Television, Inc., or any other party or parties to this suit.

(4)

May's fourth contention is: "It was error to refuse to grant defendants' motion to make Paul M. Leird, John Collins, H. G. Galloway, and C. Hamilton Moses parties to this action to retry." The court did not err in denying May's request to make Leird, Collins, Galloway and Moses parties to the action to retry. Simply stated, this suit was a suit by the Bank against May to collect on the note which May had given the Bank. When the note became due and May failed to pay, obviously the Bank was entitled to foreclose the chattel mortgage on May's property, sell the property secured thereby and any other pledged security that might be necessary to discharge the obligation. The Bank was not concerned with May's dealings or disagreements with other parties over questions completely foreign to the issues in the Bank's foreclosure suit against May. Obviously then these four individuals were not necessary parties and should not have been made parties.

We have not overlooked other contentions made by appellants, but after careful consideration, we find all to be without merit.

In conclusion we point out that following the second decree of February 9, 1959, and before confirmation thereof, May appealed to this court and on March 12, 1959, executed a *supersedeas* bond in the amount of $22,156.18 and all proceedings were stayed pending decision on the appeal here. We hold, therefore, that the Bank is entitled to, and should have its relief out of

the *supersedeas* bond, and when so relieved, by receiving the amount due it on the May note, then May's saw mill, equipment and all other collateral held by the Bank in security of his note, including said American Radio and Television, Inc., note in the amount of $29,-649.05, we order returned to him.

Accordingly, the decree is affirmed, the cause is remanded and the trial court reinvested with jurisdiction for further proceedings consistent with this opinion.

JOHNSON, J., dissents.