NATL. BANK OF EASTERN ARK. *v.* COLLINS.

5-2994                                                     370 S. W. 2d 91

Opinion delivered June 3, 1963.

[Rehearing denied September 9, 1963.]

*E. J. Butler*, for appellant.

*Brockman & Brockman, Levine & Williams*, for appellee.

FRANK HOLT, Associate Justice. The appellee brought this action as a foreclosure suit and, also, to have adjudicated the terms of their Guaranty Agreement. On September 1, 1960, the appellees, Herbert Collins, Trustee, Paul M. Leird, C. Hamilton Moses, John Collins and John Collins, Executor of the Estate of H. G. Galloway, deceased, hereinafter referred to as Guarantors, filed a foreclosure suit on two Deeds of Trust executed by W. D. May and Dorothy E. May, his wife, hereinafter referred to as May. These Deeds of Trust secured two notes by May and any sums for which the Guarantors might become liable on their Guaranty of May's note of $29,662.36 to the National Bank of Eastern Arkansas, hereinafter referred to as Bank. The Guarantors made the Bank a party defendant and asked the Court to determine their liability as Guarantors, if any, to the Bank under the terms of the Guaranty Agreement. The Bank filed an answer and

cross complaint seeking judgment against the Guarantors, jointly and severally, for $2,265.52 as a deficiency owed it under the terms of the Guaranty Agreement. May filed an answer admitting an original indebtedness of $29,662.36 to the Bank and alleged that said indebtedness was fully paid and satisfied of record June 29, 1960. May denied any indebtedness to Guarantors and in a cross complaint claimed damages for alleged collusion between the Guarantors and the Bank.

Upon a trial of these issues the Chancellor entered a decree in favor of the Guarantors against May and the Bank and dismissed their respective cross complaints. From this decree the Bank brings an appeal and for reversal urges that the Court erred (1) in finding that reasonableness of attorney's fees and court costs incurred by the Bank in its foreclosure of the May debt was not before the Court and (2) the Court erred in not entering judgment for the Bank against Guarantors for the deficiency in the amount of $2,265.52 and by not requiring said amount to be paid out of the proceeds of the foreclosure of May's Deed of Trust to Guarantors securing a contemplated deficiency under the Guaranty. We consider these points together.

On June 23, 1954, May executed a note to the Bank and a chattel mortgage to secure his loan of $29,662.36. On July 5, 1954 the Guarantors executed and delivered to the Bank a Guaranty Agreement to the effect that the Guarantors, jointly and severally, would guarantee prompt payment of the May note to the Bank. Paragraph (4) of the Guaranty reads as follows:

"PROVIDED HOWEVER, before recourse against the Guarantors, the Bank shall first have mailed to them at Little Rock not less than ten days preceding a notice of default, and, if the default be not made good, shall thereafter foreclose the said mortgage(s) and the pledge or assignment of American Radio and Television, Inc., indebtedness, and of the life insurance if any, and shall apply the net proceeds, after all reasonable costs and expenses, upon the indebtedness which is hereby guaran-

teed, and the Guarantors shall thereupon pay upon demand any balance remaining.''

May defaulted on his note and after protracted litigation, beginning in 1958, May was decreed liable on his note, which was upheld by this Court in the case of *May v. National Bank of Eastern Arkansas,* 231 Ark. 558, 331 S. W. 2d 697. On June 29, 1960, the Bank collected its judgment in full. This judgment consisted of the sum of $20,055.21 which represented the balance of the original principal indebtedness plus the accrued interest to the date of collection. The judgment also included $1,745.52, which was 10% of the judgment when first rendered plus interest thereon until the date of collection, as an attorney's fee. The judgment and decree in that case was, accordingly, marked paid in full by the Bank on June 29, 1960.

Thereafter the attorney for the Bank rendered his statement for $4,011.04 to the Bank for his legal services in this extended and successful litigation against May. The Bank paid this fee. The Bank now contends that after applying the $1,745.52 as a credit to the $4,011.04 fee, there is left a deficiency in the payment of the indebtedness of May to the Bank in the amount of $2,265.52 and that it is entitled to recover this amount as a deficiency from its Guarantors since the Bank had recovered from May all the law would permit under the express terms of May's note to the Bank. The Bank made demand upon the Guarantors for this sum on the basis such deficiency should be construed as reasonable costs and expenses and within the meaning of Paragraph (4). We agree with the observation of the Trial Court in its written opinion that the charges made by the attorney to his client, the Bank, was fair and reasonable. We must also agree with the Court that the balance of the attorney's fee paid to him by the Bank in the sum of $2,262.52 is not an enforceable item of the Guaranty Agreement. We do not think the parties intended such a deficiency to be included in their agreement. We agree with the following pertinent language in the learned Trial Court's written opinion:

"It is the opinion of the Court that the parties had in mind the deficiency that would arise by reason of the failure of the assets to bring sufficient amount at the foreclosure sale to pay the debt, interest and costs of the Bank and that the guarantors should make up such deficiency. However, the alleged deficiency in the case at bar did not arise nor was demand made upon guarantors for the payment thereof until after a judgment had been satisfied by the Bank. It does not appear in this record but in the record of the case of No. 31765 [which was appealed to this Court and affirmed in *May* v. *National Bank of Eastern Arkansas, supra*] that the Bank had a supplemental agreement with W. D. May whereby May would pay the Bank eight per cent. Both the Bank and May recognized that the guarantors would not guarantee more than six per cent. However, the Bank in that case did not ask for eight per cent on the note foreclosed but contented itself with six per cent interest. Had the Bank asserted its claim of eight per cent per annum interest for the period of five years and eleven months of its dealings with May, as it had a right to do, it would have amounted to considerably more than the $2,265.52 of excess attorney's fees claimed here. The precedent in cause No. 31765 — which was prepared by the Bank's counsel and submitted to opposing counsel before being signed by the Court — specifically waived its eight per cent per annum interest and asked only for six per cent interest."

In determining the intent of the parties we think it is significant that May's note to the Bank, which the Guaranty Agreement secured, specifically provided for attorney's fee as authorized by law in the event the services of an attorney became necessary to collect the note. The Bank saw fit to expressly include this provision in the note in its dealing with May. If the Bank had intended or expected to hold the Guarantors liable for an attorney's fee or any excess attorney's fee, other than by the terms of the note, we think the Guaranty Agreement, executed within two weeks after the note, would have so expressly provided instead of using the broad and sweeping language of Paragraph (4).

A guarantor is entitled to a strict construction of his undertaking and cannot be held liable beyond the strict terms of his contract. *City of Helena* v. *Arkansas Utilities Co.,* 208 Ark. 442, 186 S. W. 2d 783. In this case the Court said:

"* * * A guaranty has been defined as a collateral undertaking by one person to answer for payment of a debt of another. 38 C.J.S., Guaranty, § 1, p. 1129. A guarantor is entitled to have his undertaking strictly construed. 38 C.J.S., Guaranty, § 38, pp. 1182, 1183. A guarantor cannot be held liable beyond the strict terms of his contract."

In 24 Am. Jur., Guaranty, § 71, p. 158 (Supp. 1962) we find:

"A guarantor, like a surety, is a favorite of the law, and his liability is not to be extended by implication beyond the express limits or terms of the instrument, or its plain intent."

Further, § 73, p. 922, reads as follows:

"* * * Like a surety, a guarantor is liable only in the event and to the extent that his principal is liable."

The judgment on the May indebtedness to the Bank was satisfied of record by the Bank in these words: "This Judgment and decree having been paid in full it is hereby satisfied and cancelled 6-29-60." Upon payment in full of this judgment we think the discharge of May, the principal debtor, relieved the Guarantors from any further liability in this case. In 24 Am. Jur., Guaranty, § 74, p. 923, we find this language:

"If there is no debt or principal obligation the payment of which is guaranteed, there can be no contract of guaranty; and hence, if the obligation of the debtor has been paid or otherwise satisfied, the guarantor's obligation is terminated."

We hold that the liability of the Guarantors in this case is co-extensive with and does not exceed that of the principal and when the principal debtor was fully re-

leased and discharged from his indebtedness by the Bank, thereupon, the liability of the Guarantors was extinguished also.

May contends that the Court erred in refusing to allow him credit for various insurance premiums charged to him by the Guarantors. Upon a review of the record we are of the opinion that under the terms of their agreement the Guarantors had a right to advance the insurance premiums on the mortgaged property. Therefore, we find no merit in this contention.

Finding no error, the decree is affirmed in all respects.

GEORGE ROSE SMITH and JOHNSON, JJ., dissent.

GEORGE ROSE SMITH, J. (dissenting). There seem to be only two real questions upon the bank's appeal.

First, was the obligation of the guarantors more extensive than that of the principal debtors? I think it was. The preamble to the guaranty agreement recites that "the undersigned [guarantors] are desirous of guaranteeing the Bank against loss as a result of such indebtedness." Paragraph 4 compels the bank to give the guarantors ten days notice before filing a foreclosure suit. If the existing default is not made good within that time, and it becomes necessary for the Bank to foreclose, the guarantors make themselves liable for all reasonable costs and expenses of the suit. The principal debtors did not undertake either to guarantee the bank against loss or to become liable for the expenses (other than costs) of litigation. Hence the guarantor's obligation was unquestionably greater than that of May and his wife.

This reasoning also answers the suggestion that the duty of the guarantors was fully discharged when the Mays paid the judgment against them. In a foreclosure suit the greater part of the creditor's expense is apt to be incurred not in the mere obtaining of a judgment but in the collection of that judgment. It was not until the bank had collected the principal debt from the mortgagors that it was in a position to determine the full amount

828

of the expenses for which the guarantors were liable under their contract.

Secondly, in Paragraph 4 of the guaranty agreement was the phrase "reasonable costs and expenses" intended to include attorney's fees? I think so. The parties were talking about litigation and certainly knew that attorney's fees are an unavoidable expense to be incurred by a bank in bringing a foreclosure suit. The guarantors had obtained the indulgence they sought by promising to guarantee the bank against loss.

In the absence of special circumstances this phrase, costs and expenses, has been uniformly interpreted to include counsel fees. As the Utah court pointed out in *Davidson* v. *Munsey,* 29 Utah 181, 80 Pac. 743, the term "costs" has a well-understood meaning; so the use of the additional word "expenses" must mean something other than recoverable court costs. Attorney's fees are an unavoidable incident to a lawsuit and therefore fall within the costs and expenses of the litigation that is being contemplated and provided for. Among many other cases holding that "costs and expenses" include attorney's fees are *In re Keystone Realty Holding Co.,* 3rd Cir., 117 F. 2d 1003; *Fumiko Mitsuuchi* v. *Security-First Natl. Bank,* 103 Cal. App. 2d 214, 229 P. 2d 376; *State to the use of Mills* v. *Birkins,* 32 Del. Ch. 39, 78 A. 2d 868; *Burrage* v. *Bristol County,* 210 Mass. 299, 96 N. E. 719; and *In re Loudenslager's Estate,* 113 N. J. Eq. 418, 167 Atl. 194. I think the majority opinion to be contrary not only to the intention of the parties but also to the great weight of authority.

JOHNSON, J., joins in this dissent.