Ralph SCHAUSS, a/k/a Ralph L. Schauss, Appellant (Defendant below),

v.

Roy Dalton GARNER, Appellee (Plaintiff below).

No. 4951.

Supreme Court of Wyoming.

Feb. 26, 1979.

who is an accommodation party, can rely upon the release of collateral by the creditor to defend an action brought against him to recover on the note. The collateral in question consisted of corporate stock which, after its release by the creditor, but before this action was brought, was adjudged to be null and void and was ordered to be rescinded, cancelled and set aside in a different action. At the time the promissory note was executed the co-maker advised the creditor that he did not want to be involved with the collateral, stating that any arrangement concerning the collateral was strictly between the creditor and the principal maker of the note. The promissory note itself contained language indicating a waiver of the co-maker's reliance upon the collateral. The district court found in favor of the plaintiff creditor, and entered judgment against the defendant co-maker for the principal amount of the promissory note plus interest. We shall affirm the district court.

In disposing of the issues in this case we evaluate the record according to the time-honored rule favoring a successful party. We assume that the evidence offered on behalf of Garner, the plaintiff below, is true. We leave out of consideration entirely evidence introduced by Schauss, the defendant below, that conflicts with Garner's evidence. We give to Garner's evidence every favorable inference which reasonably and fairly may be drawn from it.

In this instance the principal on the promissory note became indebted to a bank in Casper, Wyoming. His note to that bank became due in November of 1973. It purportedly was secured by shares of common stock in Pollution Control and Engineering Corporation which had been pledged to the bank. None of this stock was in the name of the principal, but the parties recognize that the listed owners were nominees of this principal, and the certificates for these

Thomas J. Constantine of Constantine & Prochnow, P.C., Englewood, Colo., and John Burk of Burk & Painter, P.C., Casper, for appellant.

Leonard E. Lang, Casper, for appellee.

Before RAPER, C. J., McCLINTOCK, THOMAS and ROSE, JJ., and GUTHRIE, J., Retired *.

THOMAS, Justice.

The question presented in this case is whether a co-maker of a promissory note,

* At the time of oral argument, Guthrie, J., was Chief Justice. He retired from the court on December 31, 1978. By order of the court, entered on January 1, 1979, he has been retained in active judicial service pursuant to § 5, Art. 5, Wyoming Constitution, and § 5–1–106(f), W.S.1977, and has continued to participate in the decision and opinion of the court in this case.

shares of stock had attached to them appropriate blank assignments. Schauss had guaranteed the principal's note to the Casper bank by signing it on the reverse side.

As the due date approached, the Casper bank advised the principal and Schauss that it would not renew the note. The principal then contacted Garner, who traveled to Casper, Wyoming, to consider whether he would make a loan to the principal. He was prepared to make the loan immediately if he concluded to loan the money. Garner first met Schauss on the evening he arrived in Casper, Wyoming. Together with the principal, they had a conversation during which they discussed the promissory note to be made to Garner if he made the loan to the principal. Garner was advised that Schauss would co-sign the note with the principal.

The three parties to the promissory note met again the next morning, and again discussed the making of the loan by Garner to the principal. At that time Garner told Schauss that he was willing to make the loan, with Schauss co-signing the promissory note. Schauss advised Garner that that was fine, and he then obtained a note form from somewhere in the motel at which the parties were meeting. This form was a long-form promissory note of a Casper bank on which Garner struck out the name of the bank and entered his own. At that time the principal stated that Garner could hold his stock in Pollution Control and Engineering Corporation which the Casper bank had. In completing the note form, Garner suggested showing the corporate stock as security for the note. There was an appropriate place on the promissory note to make that entry, but neither Schauss nor the principal wanted that done. Schauss made a point of saying that this was an arm's length transaction, and that he was signing a note. His stated position was that any stock arrangement was only between Garner and the principal. Schauss explained that they could not deal in this stock, and according to Garner's testimony, Schauss wanted to stand completely away from any dealings involving the principal and stock. Schauss did not indicate that the stock was to be held as collateral.

Garner's name was not substituted for the word "bank" whenever it appeared, but the parties must have intended that substitution. Included in the promissory note is the following significant language:

> " * * * Bank [Garner] shall be under no obligation to apply to the payment thereof any funds or property belonging to any party liable thereon which may at any time be in its possession, and failure to make such application shall not affect the liability of any party hereto to bank [Garner]; * * * "

Garner did receive the stock certificates at Casper, Wyoming, and he took them back to California with him. Later the principal on the promissory note requested that he be given possession of the stock certificates so that he could vote those shares at a stockholders' meeting of Pollution Control and Engineering Corporation. Garner furnished the stock certificates to the principal, and that individual subsequently refused to return them to Garner, telling Garner instead that Garner was "over collateralized" on the loan.

The principal did not pay the loan evidenced by the promissory note when it became due. A judgment was obtained against him, but efforts to collect on that judgment were unsuccessful. Garner made demand for payment upon Schauss, who at that time asked Garner where the stock was, and Garner informed Schauss of what had occurred with respect to the stock certificates. Schauss did not at that time, however, refuse to make payment because the collateral had been released.

After the principal obtained possession of the stock certificates from Garner, but prior to the commencement of Garner's action against Schauss, a judgment was entered in a case in the United States District Court for the District of Wyoming brought by Pollution Control and Engineering Corporation against the principal and the several nominees shown as owners of the stock certificates which the principal had obtained from Garner. In pertinent part that judgment provided that it was:

"ORDERED AND ADJUDGED that the transfer of 1,936,190 shares of stock from Pollution Control and Engineering Corporation, a Wyoming corporation, to the defendant [here appear the names of the principal and his several nominees] be, and the same hereby is, rescinded, cancelled, set aside, and declared null and void * * * "

This action then was brought by Garner against Schauss to recover on the promissory note. Schauss asserted the defense of discharge of himself as an accommodation maker based upon the release of collateral (the stock certificates) to the principal. After a trial to the district court it entered its judgment for Garner, awarding him principal, interest and attorney's fees in the amount of $46,751.82, together with costs. In so doing the district court found generally for the plaintiff and against the defendant, and specifically found:

"2. That the stock certificates allegedly pledged as collateral for said promissory note were void *ab initio* and worthless as collateral as a result of the final judgment entered by the Honorable Clarence A. Brimmer on February 12, 1976, in Civil Action No. C–75–95 of the United States District Court for the District of Wyoming, * * * "

In this appeal taken from that judgment Schauss argues only matters of law. His arguments, however, are premised upon a factual conclusion that the corporate stock was taken by Garner as collateral upon which Schauss as an accommodation maker relied. His contentions are that:

1. Garner's release of the Pollution Control and Engineering Corporation stock which he held as collateral operated to release and discharge Schauss from any responsibility to pay the promissory note.

2. At the time Garner released the Pollution Control and Engineering Corporation shares to the principal those shares of stock had a value equal to or in excess of the principal and interest then due on the promissory note, and the later judgment entered in the United States District Court did not constitute an adjudica-

tion that those shares of corporate stock had no value at the relevant time.

3. The trial court erred in excluding testimony regarding settlement negotiations in connection with the action in the United States District Court, which settlement negotiations had a bearing on the value of the stock.

Schauss relies upon § 34–3–606, W.S. 1957, as amended (now § 34–21–373, W.S. 1977), and we agree that this statute is applicable. The pertinent statutory language is:

"(a) The holder discharges any party to the instrument to the extent that without such party's consent the holder:

* * * * * *

"(ii) Unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse."

The application of this statutory language, however, leads to a different conclusion than the discharge of Schauss which he seeks. The significant words are, "without such party's consent." The Official Comment to the Uniform Commercial Code, § 3–606, as it appears in 2 Uniform Laws Annotated, Uniform Commercial Code, p. 585 (West Publishing Company 1977), states in this regard:

"2. Consent may be given in advance, and is commonly incorporated in the instrument; or it may be given afterward. It requires no consideration, and operates as a waiver of the consenting party's right to claim his own discharge."

By his conduct and statements at the time this loan was made, and by the language of the instrument providing that Garner was under no obligation to apply any property of any party to the payment of the note, and that the failure to make such application would not affect the liability of any party, Schauss waived in advance his right to rely upon the discharge provisions of the Uniform Commercial Code as adopted in Wyoming. *McBurnett v. National City Bank of Rome,* 142 Ga.App. 505, 236 S.E.2d 179 (1977); *Reeves v. Hunnicutt,* 119 Ga.

App. 806, 168 S.E.2d 663 (1969); and *American Bank of Commerce v. Covolo,* 88 N.M. 405, 540 P.2d 1294 (1975).

 Even in the absence of such waiver Schauss would not have available a discharge defense under the statute. The cases which have been decided under the Uniform Commercial Code hold that the amount of the impairment of the collateral is the limit of the right of a party such as Schauss to any discharge. E. g., *Key Credit Corporation v. Young,* 124 Ill.App.2d 309, 260 N.E.2d 488 (1970); *White v. Household Finance Corporation,* 158 Ind.App. 394, 302 N.E.2d 828 (1973); *Estate of Voelker,* Iowa, 252 N.W.2d 400 (1977); and *Mikanis Trading Corp. v. Block,* 59 A.D.2d 689, 398 N.Y. S.2d 679 (1977). This is the rule that this court recognized and in effect applied in *Shaffer v. Davidson,* Wyo., 445 P.2d 13 (1968), in an instance in which total discharge was adjudged because the value of the collateral was found to be greater than the debt due at the time the action was brought. In this instance any apparent value that the shares of stock in Pollution Control and Engineering Corporation had in the hands of the principal at any time was illusory. The effect of the judgment entered in the action in the United States District Court was that the principal had no right or title to these shares of stock; instead they were null and void. This fact was established by the time of this action by Garner, and he fulfilled his burden of showing that no loss to Schauss was caused by the release of the collateral when he proved the judgment in the United States District Court. If Schauss had held those shares at the time of the judgment in the United States District Court he would have had nothing of value once that judgment was entered, and he lost nothing by any failure of Garner to preserve his rights to those shares.

It is unnecessary to reach a determination with respect to the contention made by Schauss that the value of the stock was to be determined as of the date it was released by Garner. The cases cited by Schauss in that regard, *D. W. Jaquays & Co. v. First Security Bank,* 101 Ariz. 301, 419 P.2d 85 (1966), and *Christensen v. McAtee,* 256 Ore. 333, 473 P.2d 659 (1970), both involved situations in which the asserted collateral had actual as distinguished from illusory value. As we have stated, that is not so in this case.

Holding as we have that the shares of stock in Pollution Control and Engineering Corporation had only an illusory value, the contention by Schauss that he had a right to attempt to prove value by the testimony concerning settlement negotiations also need not be determined. If any error did occur on the part of the district court with respect to that ruling, Schauss was not prejudiced thereby.

The judgment of the district court is affirmed.