Frank G. VAN BALEN and Betty A. VAN BALEN
*v.* PEOPLES BANK & TRUST COMPANY

CA 81-162                                    626 S.W. 2d 205

Court of Appeals of Arkansas
Opinion delivered December 9, 1981
[Rehearing denied January 20, 1982.]

*Rose Law Firm,* by: *Thomas P. Thrash & Herbert C. Rule, III,* for appellants.

*Young & Finley,* for appellee.

GEORGE K. CRACRAFT, Judge. Appellants, Frank G. Van Balen and Betty A. Van Balen, appeal from a decree of the Chancery Court of Johnson County in which judgment was entered against them as guarantors of defaulted notes executed by Virginia Fiberglass Products, Inc., a bankrupt third party, to the appellee, Peoples Bank & Trust Company, in which proceeding Virginia Fiberglass Products, Inc. was not a party and no relief was prayed or granted against it.

Appellants maintain that the chancellor erred in three respects: 1) That the proceedings against them as guarantors in the Chancery Court were automatically stayed and the state court's jurisdiction was ousted by virtue of bankruptcy proceedings as to the principal debtor; 2) that appellants were discharged from their guaranty agreement by an unjustifiable impairment of the collateral securing the guaranteed notes; and, 3) that the chancellor erred in not enjoining the order for sale and foreclosure because Virginia Fiberglass, as lessee of the property sought to be foreclosed, was a necessary and indispensable party to the action. We do not agree.

## FACTS

In February 1979 Virginia Fiberglass Products, Inc. entered into an arrangement with appellee, Peoples Bank & Trust Company, under which the appellee made loans in substantial amounts to it, secured by security agreements on its furniture, fixtures, equipment and inventory. As part of the arrangement appellants Van Balen, principal stockholders of Virginia Fiberglass Products, Inc., personally guaranteed those notes and further secured the repayment of the guaranteed notes by a real estate mortgage on property owned by appellants.

Although the appellee filed financing statements on all of the collateral pledged by Virginia Fiberglass Products, its filing as to the furniture, fixtures and equipment was defective, and ony the lien on inventory was perfected. Virginia Fiberglass Products subsequently filed a voluntary petition in bankruptcy under Title XI in the State of Virginia and placed itself under the protection of that bankruptcy court in an effort to reorganize and effect a plan for the discharge of

the indebtedness. The guaranteed notes were in default and the appellee brought this action in the Chancery Court against the appellants, the Van Balens, seeking judgment upon their guaranty of the notes and sale of the mortgaged real estate if the judgment be not paid. Virginia Fiberglass Products was not made a party to the action and no relief was prayed against it.

The appellants answered asserting that Virginia Fiberglass Products had entered Title XI bankruptcy proceedings and appelleee was enjoined from attempting to collect any money from the appellants "due to the fact that Virginia Fiberglass Products, Inc. is not a party to this suit, but to the above mentioned bankruptcy proceedings and is solvent and fully able to pay this plaintiff, pursuant to orders of the bankruptcy court but may not pay this plaintiff except under those orders." They answered further that as appellants were only guarantors, appellee could not foreclose the second mortgage until the principal maker was shown to be unable to pay. By subsequent amendment it further answered by affirmatively pleading that appellants had been released from the guaranty because of the failure of appellee, the holder of said notes, to properly perfect a security interest in the assets of the bankrupt.

No assertion of any interest of Virginia Fiberglass Products in the real estate sought to be foreclosed was ever made in the pleadings nor was proof of that interest tendered in the evidence presented at the subsequent hearing of January 27, 1980. No documents or orders purporting to have been issued from the bankruptcy court in Virginia or any other place was introduced. At the conclusion of the hearing the court entered a decree granting judgment in favor of the appellee against the appellants in the sum of $59,884.36 plus fees and costs and ordering the mortgaged real estate sold.

Appellants appeal from that decree, advancing those three points of error set out in the opening paragraphs of this opinion. We will decide those points in the order in which they were so listed and in our discussion of each point make reference to such other facts as are deemed necessary to an understanding of our decision related thereto.

## THE JURISDICTION OF THE CHANCERY COURT

The appellants first contend that the Chancery Court had no jurisdiction in these proceedings because, as a result of the filing of the petition in bankruptcy by Virginia Fiberglass Products, all action against them as co-debtors of the bankrupt were automatically stayed and exclusive jurisdiction of the claim vested in the Bankruptcy Court. Appellants maintain that 28 U.S.C. § 1471 has so expanded the provisions of the automatic stay provision of 11 U.S.C. § 362 as to have that effect. It is their contention that these two sections give the Bankruptcy Court original and exclusive jurisdiction of all matters relating to the bankruptcy, and specifically to the obligation of a co-maker or guarantor of the bankrupt's notes. We do not agree.

11 U.S.C. § 362 is the only pertinent section involving the "automatic stay" of bankruptcy proceedings under Chapter XI. It provides that the filing of a voluntary petition in bankruptcy effects an automatic stay as to the commencement or continuance of any claim against the debtor or his property. It extends no further and stays no proceeding other than those "against the debtor or his property." Its purpose is to give the bankrupt a breathing spell from its creditors, give it an opportunity to reorganize itself and prevent creditors from defeating these purposes by pursuing the bankrupt in another forum. It was enacted to protect the debtor and his estate, not for the benefit of other parties. *In re Larmar Estates, Inc.*, 5 BR 328 (1980); *In re Cloud Nine, Ltd.*, 3 BR 202 (1980). The automatic stay of that section does not protect the guarantors of a loan made to the debtor or other persons or parties who have not filed proceedings in bankruptcy. *In re Larmar Estates, Inc.*, supra; *In re Cloud Nine, Ltd.*, supra.

This is not to say, however, that the bankruptcy courts may not under the recent enactment of 28 U.S.C. § 1471 et seq. stay such proceedings or assume jurisdiction over them when it appears necessary and appropriate for the orderly administration of the bankrupt's estate, or where it appears that the action in the state court might impair its ability to effect the purposes of the bankruptcy proceeding, but only

that we do not agree with appellants' contention that these enactments vest *exclusive* and *automatic* jurisdiction of suits against guarantors or other matters "related to" or arising out of the bankruptcy proceedings.

The enactment of 28 U.S.C. § 1471 et seq. did substantially expand the powers of the bankruptcy courts and their jurisdiction. Under these sections the bankruptcy courts now have original, but not exclusive, jurisdiction to enjoin enforcement of state court orders involving matters arising in or related to the bankruptcy proceeding, and may supercede state court jurisdiction by removal of the cause. Under these sections although that jurisdiction is conferred where it did not theretofore exist, the exercise of that jurisdiction is not automatic, but may be acquired upon a determination in the bankruptcy court that such action is necessary in the orderly administration of the bankrupt's estate. Some affirmative action on the part of the bankruptcy court is required to accomplish that result and, unless and until the bankruptcy court elects to exercise the new enlarged jurisdiction given to it under these acts, the state court with concurrent jurisdiction, having assumed it, is free to continue to a conclusion.

28 U.S.C. § 1471 in pertinent part is as follows:

§ 1471. Jurisdiction

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11.

(c) The bankruptcy court for the district in which a case under title 11 is commenced shall exercise all of the

jurisdiction conferred by this section on the district courts. . . .

This section does not purport to give the district court exclusive jurisdiction over related matters as asserted by the appellants. It merely purports to give the bankruptcy court concurrent jurisdiction over related matters, which it did not possess theretofore. The courts have expressly so held. *In re Peterman*, 6 BR 687 (1980); *In re Moore*, 5 BR 67 (1980); *In re Lamar Estates*, supra; *In re Cloud Nine, Ltd.*, supra. In *Peterman* the court stated as follows:

> [3] Under the new Bankruptcy Code, the bankruptcy courts have 'original but not exclusive jurisdiction of all civil proceedings arising under Title 11 or arising in or related to cases under Title 11.' Therefore, a state court, acting within its own jurisdictional bounds, would have jurisdiction concurrent with the bankruptcy court with respect to civil proceedings arising in a bankruptcy case.

28 U.S.C. § 1471 creates in the federal system concurrent, but not exclusive jurisdiction of such a case as is now before us. Section 1472 fixes the venue for the proper exercise of that jurisdiction not in the district where the bankruptcy proceedings are pending, but in that district where the state court case is pending. Section 1478 provides the manner in which that jurisdiction may be acquired — not automatically, but by following prescribed removal procedure to the bankruptcy court in the proper district.

*Moore*, while holding that § 1471 did give the bankruptcy court jurisdiction over a related matter, in refusing to exercise that jurisdiction and remanding the case back to the state court stated:

> The evidence before this court mandates that the Bankruptcy Court should not entertain the state court injunction proceedings and should not make the determination concerning farming of the land while the case is on appeal. This decision is bottomed on federalism and resultant policy necessary to the smooth

functioning of a dual court system, state and federal. It is a matter of comity, if not of jurisdiction, and the federal courts would not be powerless to act. However, there are orderly state procedures which are being followed in this case and unless and until the highest appellate court to which appeal is taken reverses the trial court on the issue of the partition of the property this court should not take cognizance of the injunction proceedings. This case should be remanded to the District Court of Lynn County, Texas.

The appellants rely on the case of *In re Brothers Coal Company,* 6 BR 567 (1980) as holding that a state court foreclosure proceeding brought against a principal stockholder of a corporation who had personally guaranteed the corporate bankrupt's indebtedness could not be maintained in that court, but that exclusive jurisdiction was vested in the federal courts. We do not agree that this is the holding in that case. The language of the court in *Brothers,* in defense of its exercise of jurisdiction, was in response to a motion to remand to the state court from which the matter had been removed. It does not appear to hold that there was exclusive jurisdiction in the bankruptcy court but only that once the cause was removed to the federal court, jurisdiction was preempted unless remanded. It does not hold that, in the absence of a petition to remove, the state court would not have been free to proceed.

We conclude that as no effort was made in the case now before us to invoke, assume or exercise jurisdiction by the federal courts by removal or otherwise, the chancery court was free to exercise its "concurrent jurisdiction to pursue by orderly state process" the co-debtor of the bankrupt. *In re Moore,* supra; *In re Peterman,* supra; *In re Cloud Nine, Ltd.,* supra.

## RELEASE FROM GUARANTY

The appellants next contend that the chancellor erred in not holding that they were completely discharged of their obligation as guarantors as the result of the failure of the

appellee to perfect the lien on a part of the collateral. We do not agree that such a result necessarily follows.

It was not disputed that the guaranteed notes were initially secured by the execution of security agreements on Virginia Fiberglass Products' furniture, fixtures, equipment and inventory nor that due to the neglect of appellee, the lien on only the inventory was perfected. Nor is it seriously urged that the record does not sustain appellants' position that the rights of the trustee in bankruptcy have intervened as a result of that failure insofar as the unperfected lien is concerned. It does not follow, however, as appellants contend, that this failure, in and of itself, completely absolves them of all liability on the guaranty. Ark. Stat. Ann. § 85-3-606 (1961 Addendum) is as follows:

> Impairment of recourse or of collateral. — (1) The holder discharges any party to the instrument to the extent that without such party's consent the holder

> . . . .
> (b) unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse.

The cases which have been decided under the Uniform Commercial Code all hold that the amount of the impairment of the collateral is the limit of the right of the parties to be discharged. *Schauss* v. *Garner,* Wyo. 590 P.2d 1316 (1979); *Key Credit Corporation* v. *Young,* 124 Ill. App. 2d 309, 260 N.E. 2d 488 (1970); *White* v. *Household Financing Corp.,* 158 Ind. App. 394, 302 N.E. 2d 828 (1973); *First Security Bank* v. *Voelker,* Iowa 252 N.W. 2d 400 (1977); *Mikanis Trading Corporation* v. *Block,* 59 A.D. 2d 689, 398 N.Y.S. 2d 679 (1977). The appellate cites many other cases in his brief to the same effect. In all such cases it has been held necessary to show both the failure to properly protect the security and the damage that accrued as a result of that failure. The discharge involves proof of two elements — that the holder of the note was responsible for the loss or impairment of the collateral, and the extent to which that impairment results in loss. Mere proof that the appellee did not properly perfect its lien on a

part of the collateral does not in and of itself show that any damage resulted. By way of illustration, in *Schauss* v. *Garner*, supra, a failure to perfect a lien on pledged corporate stock was held not to effect a discharge where it was shown that the stock had no value at the time action was commenced. At the other extreme is *Guida* v. *Exchange National Bank of Tampa*, Fla. App., 308 So. 2d 148 (1975) where the court fully discharged the guarantor upon finding that the record established that the released collateral was sufficient to have satisfied the outstanding indebtedness of the principal debtor. In between these two extremes is *First Security Bank* v. *Voelker*, supra, where three items of collateral were given to secure a guaranteed note and the holder failed to protect the lien only as to one item. The Court released the guarantor pro tanto — to the extent of the value of the released collateral — but entered judgment against the guarantor for the balance of the debt. All of the cases so decided declare that the release is pro tanto only and the guarantor is released only to the extent by which the security has been impaired.

Having determined that the release of guaranty is only pro tanto we turn to the application of this rule to the record before us. Appellants do not deny the execution of the guaranty, asserting only that they have been released by the action of the holder. A guarantor who pleads release has the burden of proving that release. *Furst & Thomas* v. *Varner*, 156 Ark. 327, 245 S.W. 818 (1922). Under Ark. Stat. Ann. § 85-3-606 (1961 Addendum) that burden requires that he prove that the collateral was impaired, which appellants did do, and the extent to which the collateral was impaired by that failure. In the record before us there is no evidence as to the value of any of the collateral initially pledged, and hence there was nothing in the record on which the trial court, or we on trial *de novo*, might base such a finding. We conclude that the appellants have not met the burden of proving the extent of the impairment of the collateral and thus their rights to pro tanto release.

## THERE WAS NO ERROR IN PROCEEDING IN THE ABSENCE OF VIRGINIA FIBERGLASS AS A PARTY.

The appellants finally contend the chancellor erred in failing to join Virginia Fiberglass Products as a party to the proceeding asserting that it had a leasehold interest in the property sought to be foreclosed and as a "lessee in possession" of the premises it was a necessary and indispensable party to the proceedings. They contend that we should reverse the trial court because, as a result of appellee's failure to join Virginia Fiberglass Products as a party and the court's denial of its petition to intervene, it was denied the right to establish and defend its leasehold interest in the property.

We do not address this question for several reasons. The decree appealed from by Van Balen was entered on January 27, 1981. Neither the pleadings nor evidence before the court at that time made mention of a leasehold interest in Virginia Fiberglass. The question of defect in parties was not raised by appellants, and the chancellor did not act on that issue in those proceedings.

The appellants filed their notice of appeal from that decree on February 10th, and the clerk certified the transcript of the record on February 20th. All questions involving the alleged lease are, insofar as appellants are concerned, raised for the first time on this appeal and will not be considered by us. *Hendrix, Administrator* v. *Burton,* 1 Ark. App. 159, 613 S.W. 2d 609 (1981).

The first allegation of a leasehold interest in Virginia Fiberglass Products was made in a motion filed by Virginia Fiberglass Products on May 12, 1980, to temporarily stay the sale of the mortgaged property, which was the date set for the sale of the property by the commissioners. This motion was not filed by appellants and, as it was filed in the trial court after the transcript before us was made up and certified by the clerk, it was not included in that record. It is contained in what is designated "supplemental record" filed here on September 12th, 1980, without prior motion to file belated or supplemental transcript. We need not determine whether it is properly before us because this supplemental transcript contains no more than the assertion of such a leasehold. It brings forward no evidence to establish that allegation nor

does it contain any order or other indication that the motion was ever presented to, or acted upon by the chancellor. In the absence of such an order there is nothing for us to review.

We affirm.

GLAZE and CORBIN, JJ., dissent.

TOM GLAZE, Judge, dissenting. The majority held that appellee unjustifiably impaired the collateral given by Virginia Fiberglass to secure the note guaranteed by the appellants. After properly and correctly deciding the impairment issue, my colleagues erred in further holding that appellants were not entitled to be discharged because they failed to prove the extent of their loss due to the impairment. The majority has placed an impossible burden on appellants under the facts of this case, and I must strenuously dissent.

I believe the decision reached in this case is in error for at least two reasons. First, Arkansas case law has always favored guarantors. For example, when a modification or extension of payment terms of the underlying obligation has occurred, our courts have fully discharged the surety. See *I. E. Moore* v. *First National Bank of Hot Springs*, 3 Ark. App. 146, 623 S.W. 2d 530 (1981), and *National Bank of Eastern Arkansas* v. *Collins*, 236 Ark. 822, 370 S.W. 2d 91 (1963). This mystic rule which courts have applied in favor of sureties is discussed by Professors James J. White and Robert S. Summers in their legal text on the Uniform Commercial Code, § 13-14.[1] In discussing suretyship defenses available under § 3-606 of the Code [our Ark. Stat. Ann. § 85-3-606 (1961 Addendum)], Professors White and Summers relate the following reason why sureties have been discharged when a debtor is given additional time to pay:

> A related justification for the general rule is that any release or binding extension diminishes the surety's rights by depriving him of subrogation to the creditor's cause of action against the debtor; when creditor

---

[1] J. White & R. Summers, *Handbook on the Law under the Uniform Commercial Code*, § 13-14 (1972).

releases the debtor, he destroys the creditor's right to sue on the instrument, the right to which the surety hoped to be subrogated.

In the instant case, our court was not confronted with an extension of payment terms. Rather, we have a creditor that impaired the collateral given to secure the debt. In truth, a greater risk may occur when a creditor fails to properly perfect his security interest in collateral than in the situation where he merely gives the debtor more time to pay. In the case at bar, for instance, appellee's negligence in not perfecting its security interest has completely destroyed appellee's or appellants' rights to dispose of the collateral and credit the amount received to the indebtedness owed by Virginia Fiberglass.

Although Arkansas had adopted the general rule favoring guarantors, I am aware that our courts have not, as yet, had the opportunity to extend or apply the rule to collateral impairment situations. However, in spite of the language contained in § 85-3-606, which appears to permit the surety to be partially discharged to the extent of his loss, our Arkansas case decisions still adhere to the pre-Code rule which fully discharges the surety where a modification or extension in payments is made in the underlying written obligation. If we are to continue to fully discharge guarantors where payments are extended, as may be the case under § 85-3-606(1)(a), I see no reason why the same rule should not apply where impairment of collateral occurs under § 85-3-606(1)(b).

Even if a valid reason exists to support the application of different surety discharge rules to extension payments and collateral impairment situations, the facts in the case at hand still dictate that appellants should be fully discharged. Here, the majority held that appellee impaired the collateral, but the court refused to discharge appellants, partially or fully, because they did not prove the extent of impairment and the loss suffered by appellants. Under the circumstances, however, it was impossible for appellants to show the amount of loss they incurred due to appellee's negligent impairment of the collateral. The debtor, Virginia

Fiberglass, filed for bankruptcy, and since appellee failed to perfect its security interest, appellee's interest in the collateral became subordinate to that of the trustee in bankruptcy. Therefore, appellants' interest likewise was subordinated and their subrogation rights were diminished.

Since the unsecured collateral is now in the hands of the trustee in bankruptcy, I find it unrealistic to require the appellants at this stage of the transaction to attempt to physically locate the collateral and to assign a value to each item. Even if appellants could be successful in this pursuit, which I am unwilling to concede at this point, I find this an onerous burden to place on an innocent surety when it was the creditor who caused the collateral to be impaired in the first place. It is also significant that appellee was unable to provide the monetary value of the collateral. At trial, the appellee's loan officer testified he did not know the value of the collateral. Appellee prepared all the papers and acquired the necessary information to extend the loan to Virginia Fiberglass. The failure of appellee's loan officer to know the collateral's value prompts me to ask the question, how can appellants be expected to prove value?

I believe we should adopt the following rule set forth in *Langeveld* v. *L.R.Z.H. Corporation,* 74 N.J. 45, 376 A. 2d 931 (1977):

> If the impairment of collateral can be measured in monetary terms; then the calculated amount of the impairment will ordinarily measure the extent of the surety's discharge. But *there are factual situations —* this may or may not be one of them — *where a surety may be able to establish that he has sustained prejudice, but be unable to measure the extent of the prejudice in terms of monetary loss. Where such a situation is presented the surety will normally be completely discharged.* [Emphasis supplied.]

In reviewing this chancery case *de novo,* I believe our court should reverse the trial court's holding with directions to discharge the appellants since they showed they had sustained prejudice due to the impairment but were unable

to prove the extent of prejudice in terms of monetary loss. Under similar facts to those before us, the Illinois Appellate Court fully discharged the surety without any reference to proof of monetary loss. It based its decision on the following facts: (1) The creditor failed to file the proper financing statement; (2) The debtor then filed for bankruptcy; and (3) The creditor's security interest became subordinate to the trustee in bankruptcy. *People* v. *Housewright*, 9 Ill. App. 3d 803, 293 N.E. 2d 911 (1973). Under the holdings of either *Langeveld* or *Housewright*, I believe appellants are entitled to be discharged.

At the very least, this case should be reversed and remanded with directions that the trial court conduct further proceedings on the amount of monetary loss appellants sustained. If the extent of loss suffered by appellants cannot be shown, they should be fully discharged. On the other hand, if evidence is available and is presented as to the measure or extent of loss, the total indebtedness guaranteed by appellants should be reduced accordingly and appellants' liability should be limited to the lesser amount.

CORBIN, J., joins in this dissent.