JERRY SPEARS *v.* EL DORADO FOUNDRY, MACHINE & SUPPLY COMPANY

5-4231                                    414 S. W. 2d 622

Opinion delivered May 15, 1967

[Rehearing denied June 5, 1967.]

*Shackleford & Shackleford,* for appellant.

*M. P. Matheney,* for appellee.

GEORGE ROSE SMITH, Justice. This is a suit brought by the appellee upon a written contract by which the appellant and two other men guaranteed the payment of an open account owed to the plaintiff by Southern States Mechanical Contractors, Inc. The appellant insists that his liability as a guarantor was discharged by the appellee's action in extending the time for payment and in taking Southern States's promissory note in place of the open account. The chancellor rejected this defense, but we are of the opinion that it should have been sustained.

R. L. Clinton, J. R. Gardner, and the appellant were officers of Southern States. On October 27, 1961, they signed the following letter, addressed to the appellee: "This is to advise you that, because of our special interest in the above named Corporation, we, the undersigned do jointly guarantee the account of Southern States Mechanical Contractors, Inc. up to a limit of $6,000.00."

Six months later Spears, with the knowledge of the appellee company, sold his stock in Southern States (for $292.69), withdrew from that concern, and went in business for himself. Later on Spears obtained a discharge in bankruptcy, but he failed to schedule his obligation to the appellee and so was not released from it.

At the time the guaranty agreement was executed Southern States owed the appellee $5,074.48. On June 11, 1962, the appellee for the first time took a promissory note from Southern States for the amount due, the note bearing interest at six per cent and being payable in ninety days. The appellee discounted the note at a bank and continued to sell merchandise to Southern States on credit. When the note reached maturity Southern States paid the interest, made a payment on the account, and executed a renewal note for the balance still due. Similar renewal notes were executed and discount-

ed over a period of nearly two years, the final note being dated March 17, 1964. Clinton and Gardner, the other guarantors, signed the notes, but Spears knew nothing about them.

Southern States finally became insolvent and went into receivership, paying two cents on the dollar. The appellee was unable to collect anything from Clinton or Gardner. At last, more than three years after Spears had left Southern States, the appellee demanded that he pay the amount still due—$3,276.93. Spears's refusal to pay led to this suit, in which the appellee sought and recovered not only the face amount of the claim but also the interest and attorney's fees provided for in the last promissory note.

The guaranty, with its stated limitation of $6,000, was a continuing one which would remain in force until it was revoked as to future transactions. *First Nat. Bk.* v. *Waddell,* 74 Ark. 241, 85 S. W. 417, 4 Ann. Cas. 818 (1905). (In citing the *Waddell* case we should explain that the word "not" which appears in the next to the last line on page 246 of the Arkansas Report was inserted by a typographical error and was not part of the original text that was being quoted.)

The appellee's substitution of interest-bearing notes, payable in ninety days, for the open account, payable on demand, discharged Spears's liability as a guarantor. We considered a similar situation in *Morrilton* v. *Moose,* 185 Ark. 1051, 49 S. W. 2d 1044 (1932), where the appellees guaranteed the payment of a bank account owned by the city of Morrilton. The city accepted interested-bearing certificates of deposit, due in one, two, and three years, in lieu of the account. In holding that the sureties were discharged we said: "In the instant case negotiable instruments which might have been sold or transferred to a third party were taken in the stead of a checking account and created a new contract

not only in form, but in substance, which precluded the city of Morrilton from withdrawing its money from the bank either in whole or in part and placed the sureties in a position where they could not protect themselves." That reasoning is equally applicable to the case at bar.

Reversed and dismissed.