WORTHEN BANK & TRUST COMPANY, N.A., Appellant/Cross-Appellee,

v.

Walter A. UTLEY, Appellee/Cross-Appellant.

Nos. 83–2547 and 83–2556.

United States Court of Appeals, Eighth Circuit.

Submitted June 12, 1984.

Decided Nov. 28, 1984.

Garland J. Garrett, Little Rock, Ark., for appellant/cross-appellee.

Robert J. Brown, Little Rock, Ark., for appellee/cross-appellant.

Before ROSS, Circuit Judge, HENLEY, Senior Circuit Judge, and BOWMAN, Circuit Judge.

ROSS, Circuit Judge.

This is an appeal from the United States District Court, Eastern District of Arkansas wherein the appellant (hereinafter Worthen Bank) appeals a $1,500,000 judgment on a jury verdict in favor of appellee (hereinafter Utley) and also appeals the amount of the verdict in favor of Worthen Bank. Utley appeals the judgment on the jury verdict in favor of Worthen in the amount of $2,500,000. Jurisdiction is invoked pursuant to 28 U.S.C. § 1291. We reverse in both appeals.

## FACTS

The facts can be summarized as follows: Arkansas Communities, Inc. (hereinafter ACI) and International Land Corporation (hereinafter ILC) are corporations formed for the development and sale of recreational retirement communities just outside of Hot Springs, Arkansas. ILC is 100 percent owned by Walter A. Utley, and ACI is substantially owned by ILC.[1] The following transactions took place.

2–12–76 Worthen loaned $1.8 million to ACI, Utley signed as personal guarantor

2–12–76 Worthen loaned $600,000 to ACI, Utley signed as personal guarantor

10–27–76 Worthen loaned $450,000 to ILC, Utley signed in his individual capacity

4–21–80 ACI and ILC filed a voluntary bankruptcy, Chapter 11

4–21–81 Loan commitment for $1,100,000 made by Worthen to ACI as part of reorganization attempt

10–21–81 Second loan commitment made which superceded the 4–21–81 commitment (Utley's counterclaim is based on this commitment)

6–8–82 Worthen argues that condition precedent had not been met and withdraws the loan commitment (reorganization plan then falls apart)

At that point, Worthen sued Utley in his personal capacity in federal court for the amount of the three loans totalling $3,473,100.37. Utley countersued stating Worthen breached its 10–21–81 loan commitment

---

1. An individual by the name of Clifton Ganus owned the remaining 5 to 6 percent of the ACI stock.

agreement which caused Utley lost profits.[2] The district court expressed doubts that Utley had proved any loss, but let the case go to the jury. On August 30, 1983, the jury awarded $2,500,000 to Worthen and $1,500,000 to Utley on his counterclaim.

Worthen Bank had earlier moved to dismiss the counterclaim under FED.R.CIV.P. 12(b)(6) for failure to state a claim upon which relief could be granted. This motion was denied. At the close of the defendant's case, Worthen moved for a directed verdict arguing (1) that Utley should not have been permitted to bring the counterclaim, and (2) that the evidence showed Utley clearly breached the contract with Worthen, and that there existed nothing to the contrary on this issue. Worthen again renewed this motion for a directed verdict at the close of the evidence. Following the jury verdicts, both parties moved for judgment notwithstanding the verdict, or in the alternative, a new trial. All motions were denied by the trial court.

## IMPAIRMENT OF THE COLLATERAL

Utley argues that as a matter of law, Worthen's refusal to accept certain collateral[3] in reduction of its indebtedness constituted an impairment of the collateral. Utley makes an additional argument that the lack of financing impaired the collateral.[4] Utley bases these arguments on ARK. STAT.ANN. § 85-3-606 (1961) which states: .

(1) The holder discharges any party to the instrument to the extent that without such party's consent the holder (b) unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse.

We disagree. We find no authority, and Utley offers none, which would require Worthen to accept the collateral as a matter of law. On the contrary, the case of

*Storthz v. Commercial National Bank,* 276 Ark. 10, 631 S.W.2d 613 (1982) leads us to the opposite conclusion. In *Storthz* the court stated:

[A]ppellants further argue that appellee had a duty to accept the collateral of the appellants (the condominium units) in lieu of pursuing payment on the promissory notes. However, appellants cite no authority nor are we aware of any such authority which would contradict the well-established principle of law that the holder of a note has no duty to accept the collateral pledged absent agreement to do so.

*Id.* 631 S.W.2d at 616. In the case of *Van Balen v. Peoples Bank & Trust,* 3 Ark. App. 243, 626 S.W.2d 205, 210 (1982) the court stated that proof of two elements is required to show impairment of collateral:

the holder of the note was responsible for the loss or impairment of the collateral *and* the extent to which that impairment results in loss. (Emphasis added.)

Utley failed to prove either of these elements at trial. In fact no substantial evidence was adduced during the trial regarding this issue. Consequently, the district court correctly found no impairment of collateral on the part of Worthen Bank and was justified in refusing to so instruct the jury.

## MATERIAL ALTERATION OF GUARANTY AGREEMENT

During the trial, Worthen argued that Utley was personally liable on all three notes, citing *First American National Bank v. Coffey-Clifton,* 276 Ark. 250, 633 S.W.2d 704, 705 (1982); *Unlaub Co. v. Sexton,* 427 F.Supp. 1360, 1368 (W.D.Ark.), *aff'd* 568 F.2d 72 (8th Cir.1977); and ARK. STAT.ANN. § 85-3-415 in support of this contention.

---

2. Utley actually argued a loss in value of his stock before and after the commitment pullout and did not directly address the lost profits issue.

3. This collateral included land, machinery, and equipment.

4. Because we hold that the conditions precedent to Worthen's duty to make the loan commitment were not met, we need not address the question of whether a lack of financing impaired the collateral. *See infra* at 1274.

Utley contends that he is not liable under the guaranty agreements. He argues that Arkansas law favors releasing the guarantor from an obligation, unless the guarantor is notified and consents to material changes. *Moore v. First National Bank*, 3 Ark.App. 146, 623 S.W.2d 530, 533 (1981); *Spears v. El Dorado Foundry*, 242 Ark. 590, 414 S.W.2d 622, 623–24 (1967); *Wynne, Love & Co. v. Bunch*, 157 Ark. 395, 248 S.W. 286, 288–89 (1923). He contends, first, that the form of the guaranty was changed by the April and October loan commitments. Second, Utley argues that Worthen agreed to the $1.1 million loan commitment and then breached the commitment. This breach, argues Utley, releases him from liability as guarantor.[5]

■ We agree that the test in Arkansas is whether there was a "material alteration" of the agreement so as to discharge the guarantor. *Moore, supra*. In *Moore* the court stated:[6]

In considering the liability of a guarantor under Arkansas law, our Supreme Court has repeatedly held that a guarantor is entitled to have his undertaking strictly construed and that he cannot be held liable beyond the strict terms of his contract. *Lee v. Vaughn*, 259 Ark. 424, 534 S.W.2d 221 (1976). In the case of *National Bank of Eastern Arkansas v. Collins*, 236 Ark. 822, 370 S.W.2d 91 (1963), the court stated the rule as follows:

A guarantor, like a surety, is a favorite of the law, and his liability is not to be extended by implication beyond the express terms of the agreement or its plain intent.

In still another case concerning the extent of a guarantor's obligation, the court in *Spears v. El Dorado Foundry Machine & Supply Company*, 242 Ark. 590, 414 S.W.2d 622 (1967), held the guar-

antor was not liable where the underlying agreement was changed not only in form but in substance. In sum, we can say that Arkansas case authority has adopted the well settled principle of the law of guaranty that a material alteration in the obligation assumed, made without the assent of the guarantor, discharges him. See *Wynne, Love & Company v. Bunch*, 157 Ark. 395, 248 S.W. 286 (1923).

*Id.* 623 S.W.2d at 533.

And in the most recent Arkansas case on point, the court said:

Arkansas has adopted the well-settled principle of the law of guaranty that a material alteration in the obligation assumed, made without the assent of the guarantor, discharges him from liability as guarantor. *Moore v. 1st Nat'l Bk. of Hot Springs*, 3 Ark.App. 146, 623 S.W.2d 530 (1981). A guarantor is not liable where the underlying agreement was changed in form or in substance. *Spears v. El Dorado Foundry Machine & Supply Co.*, 242 Ark. 590, 414 S.W.2d 622 (1967). Guarantors are entitled to a strict construction of their undertaking and cannot be held liable beyond the strict terms of their contract. *National Bank of Eastern Arkansas v. Collins*, 236 Ark. 822, 370 S.W.2d 91 (1963). According to the better rule of law, a material alteration in or departure from the contract of guaranty, without the guarantor's consent, will discharge him, whether or not he is prejudiced thereby. For discussion see 38 C.J.S. *Guaranty* § 74 (1943).

Here, the underlying agreement between appellees and Inter-Sport, Inc. was a guaranty of the franchise agreement. The subsequent execution of the promissory note from 3–W to Inter-Sport, Inc. in satisfaction of sums owed on the fran-

---

5. Since we hold that Worthen's withdrawal of the loan commitment proposal was not a breach, we need not address Utley's contention that withdrawal of the loan commitment absolved him from liability as guarantor. *See infra* at 1274.

6. The court found in *Moore* that a change in the guaranteed monthly lease payments was a "material change" and discharged the obligation. Moore evidently guaranteed corporate obligations under one lease but not under later leases.

chise agreement constituted a material change in both the form and substance of the original understanding and, therefore, extinguishes any liability the appellees may have had as guarantors of the franchise agreement.

*Inter-Sport, Inc. v. Wilson*, 281 Ark. 56, 661 S.W.2d 367, 368 (1983).

■ We find that under Arkansas law, there was no material change in the form or substance of the promissory notes. First, the jury, acting under a proper instruction, did not find Utley discharged as guarantor. The evidence supports this finding. Utley was liable to Worthen on the three promissory notes. The $1,500,-000 judgment for Utley dealt with an alleged breach of the later loan commitment between Worthen and ACI. The actual terms of the original promissory notes were never materially altered. Furthermore, it is clear from the evidence that nothing was done in this regard without Utley's knowledge and, where applicable, his consent.

## AMOUNT OF WORTHEN JUDGMENT

■ Since we have found that no material change occurred releasing Utley from personal liability, we must now address the issue of whether the Worthen Bank judgment was erroneous.

Our standard of review is narrow and we will only overturn the jury verdict if it is not supported by substantial evidence. *Mizell v. United States*, 663 F.2d 772, 776 (8th Cir.1981); *Leathers v. United States*, 471 F.2d 856, 858 (8th Cir.1972), *cert. denied*, 412 U.S. 932, 93 S.Ct. 2754, 37 L.Ed.2d 161 (1973).

Utley argues that Worthen failed to prove the amount due with interest and that the testimony as to accounting methods, rate changes, and so forth was deficient. The evidence in this regard by Worthen amounted to the testimony of Watson, a vice president of Worthen Bank,

that the principal and interest owed on these three notes equalled $3,473,100.37. There was no testimony contradicting this amount.[7]

The jury came back with a verdict in the amount of $2,500,000. How this figure was or could have been arrived at is not clear. There was no testimony or evidence from the record which would support an award in this amount. Here, the amount of the verdict is not supported by substantial evidence. Consequently, we reverse the amount of the jury verdict and remand to the trial court for further action as hereinafter described.

## UTLEY JUDGMENT

■ Utley argues that the conditions precedent as set forth in the loan commitment proposal were met and consequently the jury correctly found in his favor. Worthen, of course, contends the opposite is true. In this agreement, Worthen required as a condition of closing the loan, that ACI receive long-term financing from a third party. The April 21, 1981 commitment letter stated in pertinent part:

> Our commitment is contingent on the following actions being accomplished:
>
> 1. Withdrawal of ACI from Chapter 11 Bankruptcy filing.
>
> 2. Withdrawal or settlement of Diamondhead Property Owners lawsuit.
>
> 3. Settlement of the Arkansas Power and Light suit.
>
> 4. Execution of an agreement with National American Corporation that is satisfactory to Worthen Bank.
>
> 5. *Firm commitment from third party sources to finance paper generated from lot and timeshare sales.* (Emphasis added.)

A later October 28, 1981 commitment letter which supplanted the above letter reaffirmed this contingency:

**7.** There was some testimony by Utley which indicated payments were made on the principal, but it is unclear how much was actually paid. The bank's exhibits do reflect some principal

payments on the notes which were taken into consideration in reaching the amount testified to by Watson.

SCHEDULE "B"

CONDITIONS OF CLOSING LOAN

All-American Realty Company, Inc. shall have received valid, binding commitments of long-term financing for the sale of lots and time sharing units at Diamondhead in amounts and on terms and conditions acceptable to Worthen.

And as late as April 20, 1982, Paul Watson, on behalf of Worthen Bank, wrote to Utley and said:

> I have spoken several times with Glen Ludwig at Security Pacific Finance Corporation. The only way they will consider financing time-sharing paper at Diamondhead is with a buy-back guaranty from Worthen Bank. As you know, this was never anticipated and never mentioned until recently. Our original financing commitment for new money was contingent on your being able to secure commitments for financing the time-sharing and lot paper.
>
> Unfortunately, there has not been much progress made in this situation in the last couple of months. We need to close the loan and get the project off dead center. I think we have two alternatives—(1) we are willing to go ahead and close the loan and disburse a limited amount of dollars to do some road improvements and get a small sales force on the site with the condition that you would have a specified period of time, say ninety days, in which to line up the time-sharing and lot paper financing; or (2) we will delay closing on the loan until the condition of the paper financing is met in accordance with the original terms of our commitment. In this case, we also need to impose some time restraints.

In response to this letter, Walter Utley wrote to Paul Watson on April 26, 1982, and accepted option 2. Utley indicated that his son would be meeting in Chicago with several lenders at the National Timeshare Conference.

Utley attempts to make an argument that Worthen Bank agreed to do the long-term financing. However, this contention is strongly disputed by Worthen Bank, and the evidence adduced at trial as set forth above supports Worthen's claims.

We find, therefore, that the jury verdict is not supported by substantial evidence. On the contrary, the evidence overwhelmingly shows that the parties agreed that third-party financing was necessary and this condition precedent was never met.[8] Therefore, the district court should have granted judgment n.o.v. on the counterclaim in favor of Worthen and against Utley.

**CONCLUSION**

In conclusion, we find sufficient evidence to support the finding of liability against Utley and in favor of Worthen Bank. However, we find no basis for the amount of the verdict awarded to Worthen Bank. Consequently, we reverse and remand for a proper determination of the damages to Worthen Bank. We strongly suggest that the parties consent to the appointment of a master to determine the principal and interest due. If, however, the parties do not agree to do this, a new trial must be had to determine the total amount of the debt, including interest due to Worthen Bank.

With regard to Utley's counterclaim for damages, we hold that there was not substantial evidence to support the jury verdict and we reverse with directions to grant the motion of Worthen for judgment n.o.v. on the counterclaim.

Accordingly we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

---

8. Because we find this condition precedent was never met, we need not address the issue of whether the district court erred in submitting the counterclaim for breach of the loan commitment which was between Worthen and ACI, not Utley and Worthen; nor do we need to address the issue of whether the district court erred in submitting an instruction on lost profits to the jury.