**In re John and Mary Ellen SANDERS, Debtors.**

**Mary Ellen SANDERS, Plaintiff,**

**v.**

**The MERCHANTS & PLANTERS BANK, CAMDEN, ARKANSAS, Defendant.**

**Bankruptcy No. ED 84–90M.**
**Adv. No. 85–189M.**

United States Bankruptcy Court, W.D. Arkansas, El Dorado Division.

Jan. 21, 1987.

Isaac A. Scott, Jr., Little Rock, Ark., for debtors.

Joseph Hickey, El Dorado, Ark., for plaintiff.

Allen P. Roberts, Camden, Ark., for defendant.

## MEMORANDUM OPINION

JAMES G. MIXON, Bankruptcy Judge.

On November 1, 1984, John and Mary Sanders filed a joint voluntary petition for relief under the provisions of chapter 11. Because of a potential conflict of interest separate counsel was employed by each of the debtors-in-possession. On May 6, 1985, Mrs. Sanders filed this complaint to set aside The Merchants & Planters Bank, Camden, Arkansas' (M & P), claim of lien on her real property.

Other actions were filed by Mrs. Sanders against M & P, AP 85–183M and AP 85–188M, the First National Bank of Camden, Arkansas, AP 85–184M, AP 85–186M and AP 85–187M and Stephens Security Bank, AP 85–185M. All of these adversary proceedings were consolidated for trial by agreement. A separate memorandum opinion will be issued in each case.

The proceeding before the Court is a core proceedings pursuant to 28 U.S.C. § 157(b)(2)(B) and (K). The Court has jurisdiction to enter a final judgment in the case. The following shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule of Procedure 7052.

Mrs. Sanders was born and raised in Camden. She lived and worked in New Orleans for about six years after graduating from college but has not worked since her marriage to Mr. Sanders in 1968 until after the petition was filed. Mr. and Mrs. Sanders moved to Camden in 1969.

Mrs. Sanders' father was an attorney for M & P and a member of the board of directors of M & P before his death in 1975. Mrs. Sanders inherited as her separate property substantial amounts of property

from her father's estate. She also acquired separate property from her mother.

On June 1, 1983, Mr. and Mrs. Sanders executed a promissory note in favor of M & P in the principal sum of $35,212.00. Interest accrued on the unpaid principal at the rate of 13.5% per annum. The note was due to be repaid on demand and, but if no demand is made, then the note became due on May 31, 1984. The loan proceeds were delivered to Mr. Sanders for use in the operation of his business of constructing and operating a motel in Camden, Arkansas. Mrs. Sanders received none of the proceeds from the loan.

On June 1, 1983, Mr. and Mrs. Sanders executed a mortgage in favor of M & P on real property located in Ouachita County, Arkansas, and described as follows:

The Northeast Quarter of Southeast Quarter of Section 33; and the Northwest Quarter of Southwest Quarter of Section 34; all in Township 15 South, Range 17 West, Ouachita County, Arkansas.

The real property was titled in Mrs. Sanders' name and was her separate property.

The mortgage provides, among other things, that the "conveyance is given as a Mortgage for the purpose of securing: (a) the payment of 1 Promissory Note(s) of even date herewith and all extensions and renewals of the indebtedness represented thereby in the principal amount of Thirty-Five Thousand Two Hundred Twelve and no/100 Dollars, bearing interest from date at the rate of 13½ percent per annum, and payable as follows: Due May 31, 1984."

On August 22, 1984, Mr. Sanders paid the interest on the note current. On August 23, 1984, Mr. Sanders executed an extension agreement which extended the due date of the promissory note to February 19, 1985, and increased the interest rate to 14% per annum.[1] Mrs. Sanders did not sign the extension agreement nor was she ever advised by her husband or M & P that the due date of the note was being extended or the interest rate increased.

Mrs. Sanders testified that she never gave her consent to the extension or the increase in interest rate and that she assumed that her husband's obligation was being satisfied from the operation of the motel in Camden.

I

## MRS. SANDERS' STATUS: MAKER OR ACCOMMODATION MAKER?

Both sides have presented arguments on the issue of whether Mrs. Sanders signed the note as an accommodation maker or primary maker.

Ark.Stat.Ann. § 85–3–606(1)(a) (Add. 1961) provides as follows:

(1) The holder discharges any party to the instrument to the extent that without such party's consent the holder

(a) without express reservation of rights releases or agrees not to sue any person against whom the party has to the knowledge of the holder a right of recourse or agrees to suspend the right to enforce against such person the instrument or collateral or otherwise discharges such person, except that failure or delay in effecting any required presentment, protest or notice of dishonor with respect to any such person does not discharge any party as to whom presentment, protest or notice of dishonor is effective or unnecessary.

Courts which have considered the question of whether the defenses under Uniform Commercial Code § 3–606 are available only to accommodation parties are divided. *Compare Federal Deposit Ins. v. Blue Rock Shopping Center,* 766 F.2d 744, 749 (3rd Cir.1985) (§ 3–606 is meant to apply only to parties who act as sureties and to co-makers who sign a note to accommodate the primary obligor and who have a right of recourse against the primary obligor) *with Bishop v. United Missouri Bank of Carthage,* 647 S.W.2d 625, 629 (Mo.App.

---

1. The original stipulation offered by the parties states that the extension agreement provided for interest at a rate of 13½% per annum. An amended stipulation was filed which accurately reflects the true rate on the extension agreement as 14% per annum.

1983) (plain unambiguous language of statute makes defenses available to any party to the instrument including co-makers). The Supreme Court of Arkansas has held specifically that the defenses under Ark. Stat.Ann. § 85–3–606 (Add.1961) are available to both makers and accommodation parties. *Rushton v. U.M. & M. Credit Corporation,* 245 Ark. 703, 434 S.W.2d 81 (1968). Regardless of Mrs. Sanders' status, under Arkansas law she is entitled to assert the defenses available pursuant to Ark.Stat.Ann. § 85–3–606 (Add.1961).

## II

### DISCHARGE OF NOTE LIABILITY

If the due date of a note is extended without the consent of a party eligible to rely on U.C.C. § 3–606 that party is discharged from liability to the holder of the note. *Holcomb State Bank v. Adamson,* 107 Ill.App.3d 908, 63 Ill.Dec. 704, 708, 438 N.E.2d 635, 639 (1982); *First Nat. Bank of Layton v. Egbert,* 663 P.2d 85, 87 (Utah 1983); *Varga v. Woods,* 381 N.W.2d 247, 252 (S.D.1986).

The due date of the note was May 31, 1984, and was extended one time by agreement between Mr. Sanders and M & P as recited above.

Mrs. Sanders argues that she should be discharged on the note to M & P because she did not consent to the extension of the note and because she had no notice of nor gave consent to the renewal of the note.

M & P argues that Mrs. Sanders gave her consent to extension of the note by signing the mortgage which contained the following language:

FIRST: This conveyance is given as a Mortgage for the purpose of securing:
(a) The payment of 1 Promissory Note(s) of even date herewith *and all extensions and renewals of the indebtedness.* (emphasis added).

■ M & P's argument overlooks the fact that the governing language for Mrs. Sanders' liability on the note must be found in the note itself and not the mortgage since the interpretation of these two documents is governed by different laws. The

note contains no language which could be construed as Mrs. Sanders granting any consent to extension of the due date. Therefore, Mrs. Sanders is released from liability on the note.

## III

### NOVATION

■ Mrs. Sanders also argues that the execution of the extension agreement constitutes a novation which releases her on the original note. In order for there to be a novation there must be a clear and definite intention to substitute a new debt for an old debt. *Ward v. Worthen Bank & Trust Co., N.A.,* 284 Ark. 355, 681 S.W.2d 365 (1984); *Taines v. Capital City First Nat. Bank,* 344 So.2d 273, at 276. There is absolutely no evidence of the intent of M & P to accomplish a novation. This argument is without merit.

## IV

### RELEASE OF M & P'S LIEN

Mrs. Sanders argues that the mortgage lien should be discharged under principles of the common law of suretyship. The mortgage Mrs. Sanders executed is a contract of guaranty.

For a contract of guaranty to be valid, there must be consideration. *Pacific Industries, Inc. v. Mountain Inn, Inc.,* 232 F.Supp. 801 (W.D.Ark.1964). The principal contract or loan is sufficient consideration for the guaranty contract if the guaranty was "executed before or contemporaneously with the execution of a primary debt obligation." *Pacific Industries, Inc. v. Mountain Inn,* 232 F.Supp. at 809. *See also In re Farmers' Co-Op of Ark. and Okl., Inc.,* 43 B.R. 619 (Bkrtcy.W.D.Ark. (1984), *aff'd,* No. 84–2363, slip op. at 1 (W.D.Ark. August 22, 1985), *aff'd,* Nos. 85–2146 and 85–2198, slip op. at 2 (8th Cir. June 18, 1986). Also a benefit to a party other than the mortgagor is sufficient consideration to support enforcement of the mortgage. *Sims v. First National Bank, Harrison,* 267 Ark. 253, 263, 590 S.W.2d 270, 276 (1979); *Matter of Rose,* 17

B.R. 55, 58 (Bkrtcy.W.D.Ark.1981). A mortgage by a married woman on her separate property to secure her husband's present and future debts is valid and enforceable. *Sims v. First National Bank, Harrison,* 267 Ark. at 253, 590 S.W.2d at 270.

■ Mrs. Sanders received no compensation to execute the mortgage. Mrs. Sanders received none of the proceeds of the note. There is no evidence to support M & P's argument that she received a benefit from the loan. She is an uncompensated guarantor and is entitled to have her undertaking strictly construed. She cannot be held liable beyond the strict terms of her contract. *National Bank of Eastern Ark. v. Collins,* 236 Ark. 822, 826, 370 S.W.2d 91 (1963); *Worthen Bank & Trust Co., N.A. v. Utley,* 748 F.2d 1269 (8th Cir. 1984).

The evidence of the guaranty agreement between Mrs. Sanders and M & P is contained in the written provision of the mortgage. The mortgage states that it was given to secure the repayment of a principal debt of Mr. and Mrs. Sanders of $35,212.00 executed on June 1, 1983, due in full on May 31, 1984, with interest accruing at the rate of 13½% per annum. Mrs. Sanders also agreed that her property would be security for all extensions and renewals of the original loan.

The extension agreement executed by Mr. Sanders and M & P not only extended the due date, but also raised the interest rate from 13½% per annum to 14% per annum. Two issues are raised. One, whether the increase of the interest rate is a material alteration of the note. And two, whether Mrs. Sanders consented to an increase of the interest rate in the note by signing the contract of guaranty.

An alteration of a principal contract is material if the guarantor is placed in a position of being required to do more than her original undertaking. *Vogel v. Simmons First Nat. Bank of Pine Bluff,* 15 Ark.Ct.App. 69, 689 S.W.2d 576, 580 (1985). When a material alteration in an obligation is made without the consent of the uncompensated guarantor, the guarantor is dis-

charged from liability. *Moore v. First Nat. Bank of Hot Springs,* 3 Ark.Ct.App. 146, 623 S.W.2d 530 (1981); *Worthen Bank & Trust Co., N.A. v. Utley,* 748 F.2d at 1269; *In re Farmers' Co-Op of Ark. and Okl., Inc.,* 43 B.R. at 619. An increase in the interest rate of the principal debt without the consent of the uncompensated guarantor increases the guarantor's obligation and, therefore, discharges the guarantor. *See In re Stewart,* 52 B.R. 281, (Bkrtcy.W.D.N.Y.1985); *Miami National Bank v. Fink,* 174 So.2d 38 (Fla.App.), *cert. denied,* 180 So.2d 658 (Fla.1965).

■ A guarantor may be deemed to have consented in advance to the increase in the interest rate on the principal obligation if the guaranty agreement specifically grants consent. This mortgage provides that it is for "all extensions and renewals of the indebtedness represented thereby." There is no reference in the mortgage regarding an increase of the interest rate. If the parties had intended the mortgage to secure repayment of the principal debt and interest at a higher rate than the original rate, they could have agreed to this in advance or M & P could have obtained Mrs. Sanders' consent before increasing the interest rate. By increasing the interest rate without Mrs. Sanders' consent, M & P has released Mrs. Sanders' obligation under the mortgage.

## V

## AGENCY RELATIONSHIP

■ M & P argues that the evidence establishes that at all times Mr. Sanders was acting as agent or partner of Mrs. Sanders and, therefore, his consent to the extension of the due date and the increase of the interest rate constituted consent by Mrs. Sanders. This argument of an agency relationship is simply not supported by the evidence in the case.

## VI

## CONCLUSION

Mrs. Sanders' liability on the note to M & P is discharged, and the lien in favor of M

& P on real property located in Ouachita County, Arkansas, described as:

The Northeast Quarter of Southeast Quarter of Section 33; and the Northwest Quarter of Southwest Quarter of Section 34; all in Township 15 South, Range 17 West, Ouachita County, Arkansas,

is avoided.

IT IS SO ORDERED.