HELENA CHEMICAL COMPANY *v.* Jerry CAERY, Jr.
and Jerry Caery, Sr.

CA 04-385                                              220 S.W.3d 235

Court of Appeals of Arkansas
Opinion delivered December 14, 2005

*Barrett & Deacon, P.A.*, by: *Ralph W. Waddell* and *D.P. Marshall Jr.*, for appellant.

*Roscopf & Roscopf, P.A.*, by: *Charles B. Roscopf*, for appellee.

*Lax, Vaughan, Fortson, McKenzie & Rowe, P.A.*, by: *Roger D. Rowe* and *Grant E. Fortson*, for The National Ass'n of Credit Management, Mi-South Unit, as *amicus curiae*.

LARRY D. VAUGHT, Judge. Helena Chemical Company appeals the trial court's grant of summary judgment to appellee Jerry Caery, Sr., concerning a guaranty agreement he made involving purchases from Helena made by his son, appellee Jerry Caery, Jr. Helena argues two points for reversal: that the trial court erred as a matter of law in voiding the guaranty for lack of mutuality and that the trial court erred as a matter of law when it refused to enforce the guaranty upon Caery Jr.'s default. We need not address Helena's first point because the second point is dispositive of this appeal, and we affirm.

On April 8, 1988, Helena entered into a credit sales agreement with Caery Jr. to allow him to purchase supplies on credit. The credit application signed by Caery Jr. indicated that he planned to conduct his farming operation as a sole proprietorship. That same day, Helena also entered into an agreement with Caery Sr. for him to unconditionally guarantee payment for goods delivered to Caery Jr. The guaranty agreement provided that it would cover the present balance, together with any and all future indebtedness. The guaranty agreement also provided that it was a continuing guaranty that would remain in effect until Caery Sr.

gave written notice to Helena not to make any further advances under the agreement. Finally, the guaranty agreement provided that Caery Sr. waived notice that Caery Jr. was in default prior to Helena's being allowed to proceed against Caery Sr. under the guaranty agreement.

In 1995, Caery Jr. defaulted on his obligations, and Helena refused to extend credit to him for the years 1996 and 1997. Caery Jr.'s 1995 debt was paid off in either 1996 or 1997. In December 1996, Caery Jr. formed a partnership known as JLC Farms. Helena extended credit to JLC Farms in 1998 under its original individual credit application with Caery Jr.

Helena originally filed suit against both Caerys in 1999, seeking payment of the outstanding balance of $308,000 owed on credit extended to JLC Farms. Helena and Caery Jr. entered into a "Standstill Agreement," whereby Caery Jr. would pay $120,000 upon execution of that agreement, another $50,000 by December 31, 1999, and the remaining balance in annual installments beginning December 2000. Caery Jr. failed to make the December 1999 payment. In July 2000, Helena and Caery Jr. negotiated an addendum to the Standstill Agreement, and Caery Jr. paid an additional $30,000 but failed to make other payments under the Standstill Agreement or its addendum. That suit was dismissed without prejudice in January 2000.

Helena filed the present suit on February 21, 2002, seeking payment of the outstanding balance of $167,000. The complaint alleged that the defendants were jointly and severally liable for the debt. The complaint also sought prejudgment interest and attorney's fees. The defendants answered, denying that Caery Sr. was liable for repayment of the sums owed by Caery Jr.

Caery Sr. obtained separate counsel and filed a separate amended answer, admitting that he signed the guaranty agreement but otherwise denying the allegations of the complaint. He also asserted that the goods were delivered to JLC Farms and thereby were not covered under the guaranty agreement and that this change constituted a material alteration of his obligation under the guaranty agreement. Caery Sr. later amended his answer to assert as additional affirmative defenses lack of mutuality, failure of consideration, and fraud.

Helena moved for summary judgment as to both defendants. Caery Sr. filed a cross-motion for summary judgment, asserting that he was entitled to judgment as a matter of law because he did

not guarantee the account sued upon and that the terms and conditions of the guaranty agreement had been materially altered, thus discharging him from his obligation under that agreement. Attached to Caery Sr.'s motion for summary judgment was Helena's answer to an interrogatory stating that Caery Jr. had paid off the debt that existed at the time of his default in 1997. In his affidavit, Caery Sr. stated that he did not agree to guarantee credit to JLC Farms. In response to Caery Sr.'s motion, Helena argued that Caery Sr. remained liable because Caery Jr., as a partner of JLC Farms, was still personally liable for the partnership's debts. Helena stated, both in its response to the motion and at the hearing, that it was seeking to hold Caery Sr. liable for purchases made by JLC Farms.

In its letter opinion, the trial court ruled that the guaranty agreement lacked mutuality, reasoning that, because Helena could revoke Caery Jr.'s credit sales at any time, it was entirely optional with Helena as to whether it would perform its obligation to Caery Jr. The court concluded that the guaranty agreement was not binding on Caery Sr. The court further found that Caery Sr. only guaranteed the debts of Caery Jr. and not those of JLC Farms. Summary judgment was granted in favor of Helena against Caery Jr. for the outstanding balance of $167,000. This appeal followed.

The parties filed opposing motions for summary judgment and thus, in essence, agreed that there are no material facts remaining. Summary judgment, therefore, was an entirely appropriate means for resolution of this case. As often stated, summary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *McCutchen v. Patton*, 340 Ark. 371, 10 S.W.3d 439 (2000); *Mashburn v. Meeker Sharkey Fin. Group, Inc.*, 339 Ark. 411, 5 S.W.3d 469 (1999).

Helena argues that the trial court erred in not enforcing the guaranty agreement against Caery Sr. For his part, Caery Sr. argues that the trial court correctly refused to enforce the agreement because his obligation had been materially altered when Helena extended credit to JLC Farms without seeking a new guaranty from Caery Sr. We agree with Caery Sr.

In *Morrilton Security Bank v. Kelemen*, 70 Ark. App. 246, 16 S.W.3d 567 (2000), we discussed the obligation of a guarantor:

A guarantor, like a surety, is a favorite of the law, and her liability is not to be extended by implication beyond the expressed terms of the agreement or its plain intent. *National Bank of Eastern Arkansas v. Collins*, 236 Ark. 822, 370 S.W.2d 91 (1963); *Moore v. First National Bank of Hot Springs*, 3 Ark. App. 146, 623 S.W.2d 530 (1981). A guarantor is entitled to have her undertaking strictly construed and she cannot be held liable beyond the strict terms of her contract. *Inter-Sport, Inc. v. Wilson*, 281 Ark. 56, 661 S.W.2d 367 (1983); *Lee v. Vaughn*, 259 Ark. 424, 534 S.W.2d 221 (1976). Any material alteration of the obligation assumed, made without the consent of the guarantor, discharges her. *Wynne, Love & Co. v. Bunch*, 157 Ark. 395, [248 S.W. 286] (1923); *Continental Ozark, Inc. v. Lair*, 29 Ark. App. 25, 779 S.W.2d 187 (1989).

*Id.* at 247–48, 16 S.W.3d at 568. Further, alteration of a guaranty agreement is not material unless the guarantor is placed in the position of being required to do more than his original undertaking. *Vogel v. Simmons First Nat'l Bank*, 15 Ark. App. 69, 689 S.W.2d 576 (1985).

■ It has long been held that a guarantor is discharged when the principal debtor changes the form of his business from a sole proprietorship to a partnership and credit is extended to that partnership without the knowledge or consent of the guarantor. *Conn. Mut. Life Ins. Co. v. Scott*, 81 Ky. 540 (1884); *Zeo v. Loomis*, 141 N.E. 115 (Mass. 1923); *Parham Sewing Mach. Co. v. Brock*, 113 Mass. 194 (1873); *White Sewing Mach. Co. v. Hines*, 28 N.W. 157 (Mich. 1886); *Spokane Union Stockyards v. Maryland Cas. Co.*, 178 P. 3 (Wash. 1919). As the Massachusetts court in *Parham* explained:

> This was a material change in the . . . liability of the sureties. A new person was introduced, having equal powers with [the principal] to purchase machines and manage the business. While they might be willing to be sureties for [the principal], and may have been influenced to do so from personal or family considerations, or from confidence in his integrity and business capacity, it does not follow that they can be bound, or have consented to be bound, for the acts of any one whom [the principal] may have taken into partnership. They had made no contract to that effect, there is no evidence of their consent to the change, and they are exonerated from liability for the purchases of the plaintiff's agent after the change.

113 Mass. at 197. Helena argues that the fact that Caery Jr. created a partnership with himself as a member is immaterial because, under

principles of partnership law, the debt of JLC Farms is a debt of Caery Jr. However, the Michigan court in *White Sewing Machine, supra,* rejected such an argument on the same basis as *Parham.*

■ Another factor supporting our conclusion that there was a material alteration resulting in a discharge of Caery Sr.'s liability is the substantially increased risk provided by the 1998 contract. *See Restatement (Third) of Suretyship & Guaranty* § 41(b)(i) (1996). The credit extended by Helena to Caery Jr. increased over time from $5000 in 1988, to $7500 in 1991, to $30,000 in 1993, and finally to $40,000 in 1995. Caery Jr. paid off the debt each year, with the exception of the 1995 debt noted above. The original credit application approved a credit limit of $5000. The line of credit extended to JLC Farms in 1998 was $250,000.

■ The final basis for affirming the trial court is that the payment of the principal debt extinguished the obligation of the guarantor. *Nat'l Bank of E. Ark. v. Collins,* 236 Ark. 822, 370 S.W.2d 91 (1963). Here, proof was submitted in the form of Caery Jr.'s affidavit that he paid his individual 1995 debt. Helena agreed, in an answer to an interrogatory, that the pre-JLC Farms debt had been paid.[1] There was no further debt owed to Helena until 1998, when Helena extended credit to JLC Farms. It was this new debt that the present suit was filed to collect.

Affirmed.

GLOVER and NEAL, JJ., agree.

---

[1] The record is unclear on whether the debt was paid in 1996 or 1997. Nonetheless, it is clear that the debt was paid prior to further credit being extended to Caery Jr. in 1998.